IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

AMANDA DYKES,

    Plaintiff

v.                                            NO:

                                              Jury Demanded

TOUCHPOINT SUPPORT
SERVICES, LLC,

    Defendant.

## COMPLAINT

**COMES NOW the Plaintiff, AMANDA DYKES**. She shows:

1. This matter concerns a retaliatory discharge under Tennessee common law and discrimination under Tennessee statutory law (Tennessee Human Rights Act). The case is brought in this United States District Court pursuant to diversity of citizenship jurisdiction.

### I. THE PARTIES

**A. THE PLAINTIFF**

2. Plaintiff, AMANDA DYKES, currently resides in Sequatchie County, Tennessee and is a citizen of the United States.

1

B. THE DEFENDANT

3. Defendant, Touchpoint Support Services, LLC, is a foreign corporation (Delaware), who employed Plaintiff within the Eastern District of Tennessee (namely, in Hamilton County, Tennessee).

4. The Defendant is bound by the Tennessee common law of retaliatory discharge. Tenn. Code Ann. § 50-1-304.

## II. JURISDICTION AND VENUE

5. This Court has jurisdiction pursuant to diversity of citizenship, as this case involves "citizens" of different states and the amount in controversy exceeds $75,000. 28 U.S.C. § 1332(a)(1).

6. Venue is proper in the Eastern District of Tennessee under 28 U.S.C. §1391(b)-(c). Defendant conducts business within the Court's jurisdictional limits, and the claims at issue arose within the Court's jurisdictional limits, namely, on Signal Mountain in Hamilton County, Tennessee.

## III. FACTS

7. Defendant, Touchpoint Support Services LLC, provides food, nutrition and environmental services to locations such as residential homes.

8. Defendant employed Plaintiff, in an at will capacity, as a waitress in a residential home known as the Alexian Village of Tennessee ("the Alexian"), located on Signal Mountain, Tennessee.

9. The Alexian has a contractual relationship with Defendant whereby Defendant provides food and waitress services to residents of the Alexian. The Alexian is a client of Defendant.

10. In November of 2013, Plaintiff, in her position of waitress, arrived at a resident's apartment at the Alexian and discovered the resident in distress and a state of confusion, calling out for help. Plaintiff called the nurses at the Alexian. Eventually, after much delay, nursing assistance arrived and an ambulance was called for the resident.

11. Plaintiff believed that the Alexian nurse(s), who were nearby and on duty, had taken far too long to respond to a serious situation and that injury or death could have occurred.

12. Plaintiff believed, in good faith and as an eye witness, that the nurse(s) at the Alexian had avoided providing safe, competent, professional and ethical medical care to a patient which, in turn, caused him pain. Plaintiff reasonably believed this to be against the law. See, e.g., Tennessee Nursing Regulations, 1000-02-.13; Tenn. Code Ann. 63-7-115(C)(incompetency); Tenn Code Ann. §63-7-115(F)(unprofessionalism).

13. Plaintiff therefore reported the failure to the Alexian's human resources manager. The human resources manager agreed this needed to be reported and encouraged Plaintiff to make a written incident report.

14. Plaintiff made a written incident report to the Alexian concerning its nurses, which the Alexian then channeled to its corporate higher-ups.

15. After Plaintiff's report was issued, Defendant's Director of Dining Services, Nick Booker, called Plaintiff to a meeting. He was visibly upset over Plaintiff's report because it involved Defendant's client (the Alexian).

16. In this meeting, Booker stated that Plaintiff was not a team play due to her written report.

17. Booker stated that Plaintiff's report did not represent "who we are" and that Plaintiff did not understand "the culture."

18. Booker stated that she should have not gone to the Alexian through Karen Willard, even though the matter concerned Alexian nurses, but gone *to him*.

19. Booker stated that Plaintiff's report amounted to bashing nurses.

20. Booker stated that Defendant wants "can-do" people and Plaintiff's report demonstrated that she was not a can-do person.

21. Booker stated Plaintiff should not have put out a written incident report or statement and she had not displayed team attitude.

22. Plaintiff, a waitress, responded that she believed she had reported correctly by going to Karen Willard, that the problem was with the nurses, that it was an ongoing problem at Alexian, that Booker should consider how

4

he would feel if it were his own mother at the Alexian and the nurses failed to respond to his own loved one. She objected to being disciplined for blowing the whistle.

23. Booker was angry that a report of his subordinate had reached the higher official. Booker determined that he would find a means to terminate Plaintiff.

24. Plaintiff had a strong employment history. She was paid $9.10 per hour, was in good standing per her supervisor, and received compliments from residents at the Alexian.

25. In early February of 2014, Nick Booker learned Plaintiff was pregnant.

26. On February 6, 2014, Plaintiff provided a doctor's note indicating restrictions arising from her pregnancy.

27. On February 10, 2014, Plaintiff suffered a miscarriage. Her physician scheduled further testing for February 11, 2014.

28. On February 11, 2014, Plaintiff left numerous messages at work stating that she would not be in, the reason, and that the doctor had taken her off work until a later date.

29. Later that day, Defendant terminated Plaintiff's employment on an alleged ground of "lack of work."

30. Defendant mailed Plaintiff a "Separation Notice" which stated "Lack of

Work" as the "Reason for Separation." On the block which stated "if other than lack of work, explain the circumstances of this separation," Defendant wrote nothing. It was signed by Nick Booker, Director of Dining Services.

31. In truth, there was no lack of work. Plaintiff's job, and other jobs too, were readily available. Based upon the totality of the evidence, Defendant terminated Plaintiff because she refused to remain silent about what she in good faith believed to be illegal activity. Additionally, or in the alternative, Defendant terminated Plaintiff because of her pregnancy.

32. Plaintiff has suffered lost wages and benefits. She has suffered worry, anxiety and humiliation from the termination. She seeks such actual and compensatory damages, along with punitive damages to deter such wrongdoing in the future. Under the THRA, she also seeks her attorneys fees.

## IV. LEGAL CAUSES OF ACTION

33. Based on the foregoing, Plaintiff brings suit against Defendant for:

    A. Retaliatory discharge for refusing to remain silent about illegal activities.

    B. Termination due to pregnancy in violation of the Tennessee Human Rights Act, Tenn. Code Ann. 4-21-101 et. seq.

34. Plaintiff demands a jury.

6

WHEREFORE, PREMISES CONSIDERED, PLAINTIFF requests Defendant Answer this Complaint, that Plaintiff be awarded all compensatory damages available, any other equitable relief, wage and benefit losses, punitive damages, her attorneys fees, costs, prejudgment interest and post-judgment interest, and any further relief at either law or equity to which she may be entitled.

Respectfully submitted,

**GILBERT RUSSELL McWHERTER SCOTT & BOBBITT, PLC**

/s Justin S. Gilbert
Justin S. Gilbert (TN Bar No. 017079)
100 Martin Luther King Blvd, Suite 504
Chattanooga, TN 37450
Telephone: 423-499-3044
Facsimile: 731-664-1540
jgilbert@gilbertfirm.com

Jessica F. Salonus (TN Bar No. 28158)
101 North Highland
Jackson, TN 38301
Telephone: 731-664-1340
Facsimile: 731-664-1540
jsalonus@gilbertfirm.com

Jonathan L. Bobbitt (TN Bar No. 023515)
5409 Maryland Way, Suite 150
Brentwood, TN 37027
Telephone: 615-354-1144
Facsimile: 731-664-1540
jbobbitt@gilbertfirm.com

*ATTORNEYS FOR PLAINTIFF*